The facts of the case are set forth in the briefing are not a dispute, it was not a contested The facts of the case are not significant on the issue of liability. Mr. Thomas was washing his vehicle, some kind of, I don't know what he called it, a golf cart. It was on top of the trailer, the holes first hit him in the eye, lost his vision, had a great deal of pain in his eye, and among other things, tripped and fell. He went to urgent care, saw a family doctor, complaining primarily of problems with his eyes, and on his next visit to the doctor, told the doctor about his knee, that he had injured somehow when he twisted and tripped and fell. So the only testimony, only medical testimony was that of Dr. Morgan, a board certified orthopedic surgeon, 30 year experience in Southern Illinois, who testified that in his opinion to a reasonable degree of medical certainty, the knee injury was caused by the fall. There was no evidence of prior problem with the knee, no other medical testimony, and the jury returned the verdict, and apparently from the view of the evidence, medical records went in, medical bills went in, uncontested, the foundation was laid for the reasonableness and necessity of the care. The case is exactly like, almost exactly like the recent decision of this court, Vanderson v. McNair, I asked Lee to cite that to the court, and that was granted. In that case, the issue was rotated. And I think this court in that case said the position provided uncompredicted opinions within a reasonable degree of medical certainty that the children had been hurt in the accident, all medical bills were admitted in evidence, and proper foundation for the reasonableness and necessity was admitted. The defendants advanced the argument that the injury was not caused or connected because of the delay between the overview of the accident and the report of the specific children's pain. In that case, it was a month or so, maybe longer, I don't recall. In this case, it was only three or four days of difference between when the accident occurred and the first complaint of the knee occurred. It tells his family practitioner who then sketched him to see the orthopedic surgeon who makes the diagnosis and provides the care. The court said that Anderson and the only physicians who testified provided the jury medical explanations for the delay in the experience of the symptoms. Again, all medical testimony introduced support of the theory that the children injury was causally connected. No evidence of contradicting this connection was produced. The witnesses were not impeached. Of course, their family jury verdict simply bears more of a reasonable relationship to the injuries established by Tiffany and Tron. And that's my case at an incident. How long was it since the car wash incident to when he saw the physician about his knee? I think it's covered in the brief. I know it was, but I forgot. My memory is it's days. The nice man who owned the car wash took him to urgent care on the day that it happened. His focus there was his eyes. Within less than a week, he went back and saw his family physician, Dr. Parks, about the eye and about the knee. Was it an ACL cartridge? Yes. So we're talking just days, not long. Okay. There's just nothing there other than the incompetence of the plaintiff's counsel to explain why they did what they did. Thank you. Thank you, Accomplice Counsel. Your Honor, can I please report? Shane Carnine on behalf of the defendant, I believe, Mr. Washalot. Judge, I'd like to follow up with your question quickly. It was not a matter of days that passed before the plaintiff went for the knee. It was closer to three weeks. I think it was less than three weeks. The defendant, as you know, Your Honor, is the car wash where the plaintiff claims he was injured. The amount of money that the jury awarded the plaintiff was not against the manifest way to the evidence, and the trial court did not abuse its discretion in denying a new trial. That's really the focus of why we're here, and as such, the court should affirm. I won't go through all the facts, but I need to point out a couple significant facts that are different in this case from the cases that are relied on by the plaintiff and by Mr. Horwick. First of all, the nature of the injuries is very different in this case from the Zemir case and the other cases relied on by the plaintiff. In this case, there are two distinct injuries. There was an injury to the eye claimed and an injury claimed to the knee. The medical bills for the eye were paid, but the medical bills for the knee were not paid. The other significant difference between this case and the others is that this is not an admitted liability case. This is not an admitted negligence case. Liability was contested in the trial court, and negligence was also contested. I have to take issue with Mr. Womack's comments that this case is exactly like Anderson v. Zemir because it is vastly different, and the facts that I've just pointed out are sufficient to distinguish this case from Zemir. Why would it make any difference in this case if liability was an issue? They awarded damages for the eye. They couldn't have done that. They didn't reduce the amount of the damages by comparative negligence, did they? No, Your Honor, but it makes a difference because the jury was faced with a completely different situation and they were provided a completely different set of instructions. The Zemir case was a rear-end car accident with admitted liability, and the jury had less options in that case than they had in this case. Here, the jury was told that they determined whether any of the claimed elements of damages had been proven. So the set of instructions that get to the jury are what make it vastly different on the issue of liability. How would liability in this case reduce the amount of damages? Were they instructed on comparative negligence? No, Your Honor, but the issue would be that liability could be different depending on what damages it would cost. So the jury could come to the conclusion that the defendant was liable for the eye injury because they believed the testimony, they had the opportunity to evaluate the credibility of the witnesses, they had the opportunity to view the witnesses firsthand, to judge the credibility of the plaintiff, and to determine whether he was exaggerating the knee injury or not. You mean the proximate cause, whether the knee was proximately caused by the negligence. Yes, Your Honor. Not that there wasn't negligence. Well, yes. I understand your point. That's the point of one of the steps the jury would have to take. In other words, in the Anderson v. Samir case, the first three steps the jury doesn't have to address. Breach of duty, liability, proximate cause, the jury doesn't have to address. All they have to look at is damages. So in this case, the jury has to go through those additional steps, and the jury had to follow the instructions that were tendered by the plaintiff, that they determine whether the claimed elements of damages such as the knee had been proven to their satisfaction. So that's the difference on the liability issue, Your Honor. Also, in the Anderson case, the nature of the injuries related to neck pain and shoulder pain. And there was testimony, there was medical testimony in that case that the late experience of pain in the shoulder was common. The doctor said it was because the patient simply doesn't experience shoulder pain until the neck starts to improve. So that was the Anderson v. Samir case, but that is not what we have here. As I've said, the case we have here is completely different because we've got very distinct claimed injuries. And no reason was given for why symptoms would develop three weeks later for a claimed foreign ACL. No reason was given. The jury could have believed the defendant's representative, Mr. Donelson, who said that the plaintiff was walking normally and that he made no complaints about the knee. And when you couple that testimony with the doctor's testimony that an ACL injury is very painful, and it is the type of injury that often requires football players to be carted off the field, there were sufficient discrepancies in the testimony that would support the verdict here. And so that's the nature of the injury is what I'm getting at here, is that it's vastly different from the Anderson case. The Anderson case explains that testimony may be contradicted and discredited by adverse testimony, circumstantial evidence, discrepancies, and omissions. And this case really has them all. That's why this case is so much different because this case has all of those different elements. There are contradictions that the jury heard in this case. Did the plaintiff have pain in the knee immediately or not? He says he did. My client says he didn't make any complaints of pain and he didn't tell a doctor about any pain for three weeks. Did he have trouble walking or not? He said that he was so in shock that he was stumbling around and he couldn't walk straight. My client said that he walked just fine. Was he shaking and in shock like he said or was he perfectly calm like my client said that he was? This case also has circumstantial evidence that could have led the jury to different conclusions. The jury could have gone different directions based on the circumstantial evidence. Does the fact that he could walk, that he could drive down the street, that he could go camping, take his golf cart that he just washed, that he could take that camping immediately after this accident, does that weigh against a conclusion that his knee was injured at the car wash? It does. And there are also discrepancies in the testimony and the plaintiff's attorney addressed those discrepancies in closing argument. Since the plaintiff nearly cried and came to tears on the witness stand, which the jury observed and the trial court observed, it may have appeared that he was trying to exaggerate some of his pain and that's what prompted the plaintiff's counsel to say to the jury, I think some of you may have thought what the heck is wrong with this guy? Is he trying to fake injuries? And that was pointed out by the plaintiff's own attorney and it raises a very important point about this court's review of the issue presented. The trial judge, as I mentioned already, the trial judge had the opportunity to observe the witnesses and so did the jury. They had the benefit of seeing the testimony that came from the plaintiff and that's why the standard of review is very discretionary and the appellate court is reluctant to upset the jury's verdict. This court actually said earlier this year that this court is in no better position to judge the appropriate amount of a verdict than are the 12 people that sit in the jury box, observe the witnesses, and hear the evidence. Now not only was the plaintiff walking fine, he drove his car, he made no complaint about the need to doctors or to the defendant's representative, he went for a weekend of camping after he got his golf cart cleaned at the car wash. The Anderson and Baker cases also say if the testimony of a witness is not contradicted by direct adverse testimony or by circumstances nor inherently improbable and the witness has not been impeached, the testimony cannot be regarded by the jury. And I think that that is what the plaintiff is attempting to hang his hat on here. But there are several layers in that quote that I just read to you and all that's necessary for this court to affirm are circumstances that contradict testimony from the plaintiff's witnesses. And the circumstances I have mentioned do just that. And those circumstances are what separate this case from the Anderson v. Samir case. Even though the plaintiff had a doctor that articulated the plaintiff's subjective complaints, the circumstances of this case were at odds with what he told his doctor and they were at odds with the actions that he took when he went for a weekend of camping. Baker v. Hudson is another case that's cited in the briefs and that was also a car accident case of admitted negligence. As I mentioned, negligence and liability were contested and we discussed that issue briefly, but there was testimony in this case that the rubber hose at the outside car wash was connected to a bomb that the plaintiff was using to spray his golf cart with a brush. But there was no testimony from an expert witness of the plaintiff's to say anything about the lifespan of the rubber hose. Was this not cracked and checked or something? Wasn't there testimony in that? Your Honor, the testimony was that it was checked. So it didn't look like a new hose or a hose that was very flexible. It had wear on it, I think is the testimony, and the terminology was that it was checked. I think that he may have compared it to a tire or rubber. It's not, I don't want to say oxidizes, but that's not. How much pressure did this system have, like 1,200 pounds? I don't know if that's in the record. Not in the evidence? Not that I know of.  And the testimony was that the hose was actually checked or tested that morning. I'm using the word checked in a couple different ways here, but it was tested the morning of the plaintiff's injury. Well, the test they applied was they turned it on at work and they shut it off. Is that the test, or was it actually put a, what is the burst pressure on that hose? Was that the test? I don't believe the pressure was the test. No, I mean, if a hose breaks, it breaks at a certain pressure. There was no burst pressure test. It's just when they turned it on at work, they shut it off. Yes, Your Honor. The plaintiff didn't do that. So that could mean it passed for a little while, but the next time it could explode. And the jury could have come to different conclusions based on that testimony. There was no evidence it was cut or anything, was there? No, Your Honor. Okay. But the jury could have come to different conclusions. But they didn't? Well, they came to a conclusion that it burst, and they came to the conclusion that the medical bills for the eye were related. That's the conclusion they came to. And you're not cross-appealing that, the verdict for the 8500? No, Your Honor. Okay. I guess really, when we get down to it, the issue becomes, is the $1,000 award for medical bills against the manifest way to the evidence. There are lots of other issues that we could think about, but that really is based on the standard of review of this case. Getting to this court was $1,000 for medical bills against the manifest way to the evidence, and it was not because it was in line with the amount of money or with the bills for the eye injury. And there's actually an exhibit that I've attached to the briefs. It's Claims Exhibit 16. But if you take a look at that, you'll see on the top, right, there's an X for pay, a zero for don't pay, and a check for pay. These are on the original document in the court's record. I've attached a photocopy of the original as a pencil, and this is what was submitted to the jury. You can see, looking at 816.06 down to 828.06, they've put in Xs for paid. Who put the Xs on? Pardon me, Your Honor? Who put the Xs on in the X paid? Was that you during closing argument, or where did they come from? No, Your Honor. They're in a pencil, and I did not do it.  Well, that's all I can tell you for sure, Judge. Plaintiff's Exhibit 16, when it went into evidence, did it have these marks on it? No, sir. So you're saying it came out of the jury room like this? Yes. It didn't go in like that? That's my understanding, Judge. So you're arguing that we're to draw inferences from what the jury did based on what's marked on here? Actually, my effort here is to show you how the jury added up the numbers that they got. Since the question is whether $1,000 in medical bills is against the manifest way of the evidence, the way to determine that is to figure out how they came to that number. So that's what I'm attempting to do now. If you add up the Xs for what is paid with the check marks for pay, you get to $973.85. And you can see where the check marks are. These are all for Marion Eye Center. Each one of these check marks is for Marion Eye Center. Each one of the Xs is paid for the first visits to the eye doctor. So the jury added up these numbers, and they rounded up by about $26. And that supports the verdict, and that's really the basis for the court to affirm. The number that they came to was not against the manifest way of the evidence. They used their common sense. They followed the instructions that were given to them. Planned for God's fair trial. There's no evidence that what they did was arbitrary or based on prejudice, which is why this is all the court should affirm. Thank you. Thank you, counsel. Counsel? Judge, I checked the dates in the brief. The accident happened on August 18th. He's first reported to me on 9-7. About three weeks passed by. The argument by the defense is confusing. The issue of negligence was contested but barely. For example, the defendant testified without objection about post-remedial change that he made. He now replaces the holes on a regular basis because he said there's no way to determine whether it was safe or not before then. The liability, the negligence was clear cut. There's no question about that. The next issue, and I don't understand the counsel's argument about how negligence has anything to do with damages. If you have negligence and you have cross-referrals, then you look at the nature and extent of the damages. Here, there was no – Dr. Morgan testified about all of the facts. He knew when the accident happened. He knew when it was first reported to him. He knew what he saw on examination. He knew what he saw when he did the procedure that he performed. He's the only one that saw inside the knee. He testified that the care was related to the accident, causally connected. He testified that the bills were reasonable and that the charges were reasonable and the care was necessary. And he connected it to the accident. And then you leap from that uncontradicted, unimpeached testimony, and no other – there's no other testimony of that. There's no testimony that they had a prior problem. No testimony that he had a prior accident or an accident in between the two things. I feel almost like an idiot. My client was overwhelmed, obsessed almost with his eyes. He still believes probably today that he has permanent eye injury, and he may. I don't know. But I didn't have any evidence to show that. I had medical testimony by a board-certified ophthalmologist that said what he had was an abrasion. It's got off a painful, terrible, terrible pain, but no permanent problems. And on the stand, my client still tried to talk about how he thought he had permanent injuries. And I said he doesn't. And I was honest with the jury because I thought, silly me, that you were affected by medical testimony. If you didn't have medical testimony backed up, you couldn't put it on. I didn't know that you could just make stuff up as you go along like the jury did in this case. I wasn't aware that they had ignored the instruction about not to mark on this or any other exhibit, but apparently they did. But there is no evidence at all contradicting what Morgan said. Morgan knew about the three weeks. He knew about the injury. He knew about the nature and extent of it. He said that you can have ACL injuries that happen quickly and cause problems, but they don't always happen that way. It didn't happen that way in this case. It could have been a minor tear that got worse with time. There's all types of explanations for it. But there's nothing there to back it up. And when you take uncompredicted, unimpeached medical testimony and ignore it, you're back where we were with Dippen. The jury, there was no relationship between their suspicions that perhaps because he claimed it hurt that day and didn't report it that day, that it didn't happen that day. Now, I don't know how you can cross-examine doctors. I can't cross-examine defense lawyers. I don't know how you counter this kind of nonsense when it's thrown to the jury. There's no medical basis for it. If there was another doctor there that said, oh, this couldn't have happened because he waited three weeks, I could cross-examine that guy. But that's not before the jury. The only testimony that's there is the uncompredicted, unimpeached testimony of a treating doctor who treated the guy, and this guy got better. He's got problems with his eyes, with his knees. There is no relationship between the verdict and those damages. They totally ignored it for whatever reason. Is the doctor's testimony based in part on the subjective complaints of your client? Yes. And if the jury doesn't believe your client, then it goes to the weight of the doctor's testimony. Yes. But I asked the doctor those questions. I asked the question, were they consistent with what he said happened, consistent with everything else that was there? And there's nothing else there. There's nothing else that shows any type of injury sufficient to cause that injury between the time period that we're talking about. All that's covered with his testimony. Thank you. Thank you, counsel. Excuse me. Thank you, counsel. We'll take the case under advisement. We appreciate the briefs and arguments.